UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH M. ROSICH,

                              Plaintiff,

                -against-

LA SALLE ACADEMY,

                              Defendant.

Case No. 1:24-cv-09183 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Joseph M. Rosich ("Rosich" or "Plaintiff") brings this action against La Salle Academy ("La Salle" or "Defendant"), his former employer, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. § 12101, the Age Discrimination in Employment Act (ADEA) of 1967, 42 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 290 *et seq.*[1] *See generally* Dkt. 1 ("Compl."). La Salle moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). Dkt. 7. For the reasons that follow, the Court GRANTS La Salle's motion to dismiss.

## BACKGROUND[2]

### I.    Factual Background

La Salle is a private college preparatory school located in New York City, New York. Compl. ¶ 11. Rosich is a Hispanic man and was 65 when this lawsuit was filed in 2024.

---

[1] The Complaint also purports to bring claims under the New York City Human Rights Law, N.Y. Admin. Code § 8-101 *et seq.*, *see* Compl. ¶ 2, but does not actually allege any violations of that law, *see id.* ¶¶ 48-89 (Counts I to V).

[2] Unless otherwise noted, the facts stated herein are taken from the Complaint and documents incorporated in or integral to the Complaint and are accepted as true for purposes of this

Compl. ¶ 10.  He began working at La Salle as a science teacher on or about September 4,
2018.  Compl. ¶ 12.  He also served as a homeroom teacher, which involved supervising
students in the morning beginning at 7:40 a.m.  Compl. ¶¶ 16-18.  La Salle's faculty handbook
requires teachers with a homeroom to "develop and maintain a plan for appropriate use of the
homeroom period."  Compl. ¶ 19; *see* Dkt. 9-8 at 9 (La Salle Faculty Handbook stating that
"[a]ll full time teachers will have either a homeroom or be available for, substitution or a
supervisory period").

In November 2021, Rosich was driving at about 50 miles per hour when a deer hit the
side of the car, causing a car accident.  Compl. ¶ 14.  The accident caused Rosich "severe
anxiety about driving in the dark," and he was diagnosed with post-traumatic stress disorder
("PTSD").  Compl. ¶ 14.  As a result of his PTSD, Plaintiff alleges he could not drive in the
dark.  Compl. ¶ 15.

Before this accident, Rosich arrived at La Salle "well before 7:40 a.m.," but after the
accident could not reliably get to his workstation at 7:40 a.m. due to his PTSD.  Compl. ¶ 17.
He alleges that in or around November 2022, he spoke with La Salle's principal, Kerry

---

motion.  *See Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir.
2018); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

La Salle submitted several exhibits in support of its motion, which it contends the Court may
consider in resolving the 12(b)(6) motion either as subject to judicial notice or as incorporated
into the Complaint by reference.  Kreuger Decl. ¶¶ 5-13; Dkts. 9-1 to 9-10.  Rosich does not
object to the Court's consideration of these documents.  *See generally* Opp.  The Court has
reviewed the exhibits and will take judicial notice of the documents filed with the New York
State Division of Human Rights and the EEOC.  The Court will also consider the La Salle
Academy Faculty and Staff Handbook, the email thread between Plaintiff and Conroy, the
Federation of Catholic Teachers' collective bargaining agreement with La Salle, and the 2023-
2024 employment agreement offered to Rosich, since those documents are incorporated by
reference in the Complaint.  The Court need not determine whether the 2018-2022
employment agreements, which are mentioned only in passing and thus are not incorporated
by reference, are integral to the Complaint, *see* Compl. ¶ 41, since the Court would reach the
same conclusion regardless of whether it considered those agreements.

Conroy, "to address his arrival time in the morning."  Compl. ¶ 16.  Rosich requested an

"accommodation of a 10 minute grace period for his morning arrival."  Compl. ¶ 16.  Rosich

needed this accommodation only if his bus was late or in the winter months, when it was dark

in the morning.  Compl. ¶ 16.  La Salle did not grant the proposed accommodation.

Compl. ¶ 20.  Rosich alleges that La Salle has provided accommodations to other faculty

members for orthopedic issues, that "many faculty members were given significant

modifications to their teaching duties due to the long-term effects of Covid," and that his

request for a 10-minute grace period "was not an undue burden" for La Salle.  Compl. ¶ 25.

In March 2023, Conroy told Rosich that his arrival time negatively impacted the

students.  Compl. ¶ 21.  In an email dated March 8, 2023, Conroy emailed Rosich,

acknowledging that they had spoken earlier in the year about Rosich's "arrival time and

commute issues at times" and noting that the reports of his sign-in times since November,

when La Salle got a "new fingerprint machine," reflected that Rosich had been late 65 percent

of the time that he signed in, that he had signed in after 7:50 a.m. 29 percent of the time, and

that he had not signed in at all on 8 days. Dkt. 9-9 at 3; *see also* Compl. ¶ 22.  Rosich replied

to the email and explained that he had to begin "rely[ing] on the bus as transportation from

N.J." when "Robert [his coworker] decided to no longer drive," and that the bus "arrives in

the city between 7:30 and 7:50" each day depending on traffic.  Dkt. 9-9 at 3.  He told Conroy

that when he is "running late," he "typically inform[s] the administration and Mr. Neering so

he can get the kids into homeroom for me," and that sometimes he "sign[ed] in late or forg[o]t

to sign in so [he] [could] get to homeroom and let the kids into the room."  *Id.*; *see also*

Compl. ¶ 18.  He explained that his other option, carpooling, would keep him from running a

club after school.  Dkt. 9-9 at 3.  Finally, he wrote: "I am unable to drive in myself because I

have difficulty driving in the dark and feel it [is] unsafe to do so.  As you might recall, I had

an accident two years ago, hitting a deer under those exact circumstances, nearly destroying

my car, and injuring me." *Id.* Conroy replied on March 13, 2023 as follows:

> I can appreciate the complexity of this, but it does require that you find a
> solution. Can someone drop you at a NJ transit train in the morning? Or
> Uber/Lyft there? If the carpool option is the only one, we will have to sort out
> how to address the Fitness club. Please let me know how you will be addressing
> this.

*Id.* at 2. Rosich claims that he was afraid of losing his job because of his arrival time,

Compl. ¶ 24, and emailed Conroy on March 13, 2023, explaining that he had "resolved [his]

transportation issue and will arrive at school before 7:41," and that his solution "should all be

finalized in the next week or two," Dkt. 9-9 at 2.

At some point in the 2022-2023 school year, La Salle assigned Rosich to work in

classroom 507, which had no heat. Compl. ¶ 27. He alleges that La Salle did so "in an effort

to discriminate against [him] due to his sex and age." Compl. ¶ 27. On March 14, 2023,

Rosich emailed Conroy that classroom 507, where Rosich was assigned to work during the

2022-2023 school year, "was extremely cold." Compl. ¶ 29. Rosich alleges that it was

around 37 degrees that day and that "[he] and his students had to wear multiple layers of

clothing to remain warm," while other classrooms and offices in the building had "ample"

heat. Compl. ¶ 29. "La Salle did nothing to rectify the issue . . . ." Compl. ¶ 30. He alleges

that La Salle ignored his complaint due to his "disability, requests for accommodation, age

and gender." Compl. ¶ 31.

Rosich also alleges a "pattern of discrimination against older, male faculty members at

Defendant La Salle," and identifies two male faculty members, P.M. and R.C., who were

"discriminated against and were being forced out of their jobs due to their sex and age in or

around 2022 through 2023." Compl. ¶ 34; *see also* Compl. ¶¶ 32-33. At some unidentified

point "during the school year," P.M., a 68-year-old male teacher, was told that he needed to

pack up his classroom, since it "would be repurposed for a fitness room." Compl. ¶ 32. "P.M.'s classroom was never repurposed as a fitness room" and "remained empty throughout the academic year." Compl. ¶ 32. R.C., a 69-year-old male teacher, "expressed interest in being appointed Department Chair for the Social Studies Department" during his employment at La Salle. Compl. ¶ 33. Despite the fact that R.C. was "more qualified for this position," La Salle denied his request and instead hired "a younger, less qualified candidate." Compl. ¶ 33.

In or around May 2023, La Salle provided Rosich with an employment agreement for the 2023-2024 academic year. Compl. ¶ 35. The employment agreement stated, in relevant part:

> We are pleased to confirm your continued employment with La Salle Academy for the 2023-2024 academic school year.
>
> The union contract was reopened for negotiations for *salary increases* for the 2022-2023 school year. Your adjusted salary for the 2022-2023 school year, which will be retroactive to September 1, 2022, will be announced following Faculty/Union ratification of the agreement. The compensation due will be paid in accordance with the terms of the agreement.
>
> Your union contract will end on August 31, 2023. A new contract will be negotiated which will include the 2023-2024 compensation information and other details pertaining to your continued employment at La Salle Academy. The timing of the opening of these negotiations will depend on when steps are taken by the Union to do so.

Dkt. 9-10 at 2 (emphasis added). The agreement did not indicate Rosich's base salary. Compl. ¶ 36. The Federation of Catholic Teachers' (the "Union") collective bargaining agreement with La Salle provided that the contract would "be reopened for negotiations over wage increases for the fourth (4th) year of th[e] Agreement" "[a]s of September 1, 2022," and that the Union and La Salle would also "discuss the method and timing of adjusting the salaries of all teachers to bring them into compliance with the Step Salary Schedule." Dkt. 9-7 at 42-43. Rosich alleges that he had always received notice of his salary in his employment

agreement in each prior year that he had worked for La Salle.  Compl. ¶ 41.  Rosich made

"several attempts," both by email and in person, to voice his concerns about the employment

agreement to Conroy and Brother Thomas, La Salle's president.  Compl. ¶ 37.  "Rosich did

not receive any clarification regarding his salary or salary range."  Compl. ¶ 38.

On May 30, 2023, Rosich sent an email to Mary Kenny, a human resources employee,

as well as Brother Thomas, "stating that it would be impossible" for him "to sign the

employment agreement without knowing his salary or salary range for the 2023-2024

academic year."  Compl. ¶ 39.  On May 31, 2023, Kenny and Brother Thomas replied and told

Rosich that he "should contact the Union."  Compl. ¶ 40.  Brother Thomas stated that he was

"obligated to abide by the Collective Bargaining Agreement [and] therefore cannot enter into

any individual agreements."  Compl. ¶ 40.  The same day, Kenny and Brother Thomas told

Rosich that his "'lack of response' was an indication that [Rosich] would not be returning

to . . . La Salle during the 2023-2024 academic year."  Compl. ¶ 42.

On or around July 7, 2023, La Salle posted a job opening to fill Plaintiff's position and

included a salary range in the job opening.  Compl. ¶ 43.  La Salle posted the job opening

before any union negotiation with Rosich.  Compl. ¶ 44.

## II.    Procedural History

On August 3, 2023, Rosich filed a complaint with the New York State Division of

Human Rights (the "NYSDHR").  Dkt. 9-2 ("NYSDHR Compl.") at 2.  The complaint

authorized the NYSDHR "to accept this complaint on behalf of the U.S. Equal Employment

Opportunity Commission (EEOC)."  NYSDHR Compl. at 2.  On February 5, 2024, Rosich

filed a complaint with the EEOC directly.  Dkt. 9-4 at 2.  On July 26, 2024, the NYSDHR

issued a determination and order after investigation.  Dkt. 9-3 ("NYSDHR Ord.")  The

NYSDHR determined that there was no probable cause to find that La Salle had engaged in or

was engaging in the unlawful discriminatory practice complained of based on the NYSDHR's investigation, and therefore dismissed the complaint.  NYSDHR Ord. at 1, 3.  On September 11, 2024, the EEOC issued Rosich a notice of right to sue.  Compl. ¶ 7; Dkt. 9-5 at 2.

Rosich filed this lawsuit on December 2, 2024.  *See generally* Compl.  On February 3, 2025, La Salle moved to dismiss the NYSHRL and NYCHRL claims pursuant to Rule 12(b)(1), and to dismiss the federal claims pursuant to Rule 12(b)(6).  Dkt. 7; Dkt. 8 ("Br."); Dkt. 9 ("Kreuger Decl.").  Rosich filed his opposition and a proposed amended complaint on March 3, 2025.  Dkt. 12 ("Opp."); Dkt. 12-1 ("PAC").  La Salle filed its reply on March 18, 2025.  Dkt. 13 ("Reply").  The motion is thus fully briefed.

## LEGAL STANDARDS

Under Rule 12(b)(1), a party may move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *accord Saudagar v. Walgreens Co.*, No. 18-cv-00437 (KPF), 2019 WL 498349, at *6 (S.D.N.Y. Feb. 8, 2019).  "In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, but 'the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings.'"  *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 254 (S.D.N.Y. 2018) (alteration in original) (citation omitted) (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)); *see also Suarez v. N.Y. Cnty. Dist. Att'y's Off.*, No. 22-cv-10855 (PGG) (OTW), 2025 WL 894516, at *7 (S.D.N.Y. Mar. 24, 2025) (similar).

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Francis v. Kings Park Manor, Inc.*,

992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court draws all reasonable inferences in the plaintiff's favor and accepts as true all nonconclusory allegations of fact. *Id.* However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 557 (2007)). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I.    Rule 12(b)(1) Motion

Rosich alleges that he was discriminated against because of his disability, age, and gender in violation of the NYSHRL. Compl. ¶¶ 61-66, 75-81. La Salle moves to dismiss these claims under Rule 12(b)(1), arguing that the Court lacks jurisdiction to consider them. Br. at 8-9. Where subject matter jurisdiction is challenged, the plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). Rosich does not address this motion in his opposition. *See generally* Opp. La Salle argues that Rosich has therefore "effectively concede[d]" and "abandon[ed]" these claims. Reply at 2. However, "because lack of subject matter jurisdiction can never be waived or forfeited, the Court must independently determine whether it has the power to hear and decide the case regardless of any concessions by the parties." *Alowaiti v. Wolf*, No. 18-cv-00508 (ER), 2021 WL 2941753, at *3 (S.D.N.Y. July 12, 2021) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)).

La Salle argues that this Court lacks jurisdiction over Rosich's claims under the NYSHRL because of the NYCHRL and NYSHRL's election-of-remedies provisions. Br. at 8-9.[3] "Both laws contain an election of remedies provision that bars a person who has filed a complaint with any local commission on human rights from filing a lawsuit for the same cause of action." *Smith v. Sch. of Visual Arts*, No. 15-cv-08049 (RA), 2016 WL 3440553, at \*2 (S.D.N.Y. June 9, 2016) (quoting *Alston v. Microsoft Corp.*, No. 08-cv-03547 (DC), 2009 WL 1116360, at \*4 (S.D.N.Y. Apr. 27, 2009)); *see also* N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(a). These provisions act as a "[d]irect bar" to a federal or state court's jurisdiction over any claims previously submitted to the NYSDHR or the New York City Commission on Human Rights ("NYCCHR"), *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011), as well as a "[d]erivative bar" for claims "arising out of the same incident on which [the NYSDHR or NYCCHR] complaint was based," *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011); *see also Chakraborty v. Soto*, No. 16-cv-09128 (KPF), 2017 WL 5157616, at \*7 (S.D.N.Y. Nov. 6, 2017) (similar). The derivative bar "also prevents a plaintiff from asserting claims against new defendants based on the same alleged discriminatory conduct." *Smith*, 2016 WL 3440553, at \*2. "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under [Rule] 12(b)(1) rather than 12(b)(6)." *Suarez*, 2025 WL 894516, at \*9 (quoting *Higgins*, 836 F. Supp. 2d at 187); *see also Rasmy v. Marriott Int'l, Inc.*, No. 16-cv-04865 (AJN), 2017 WL 773604, at \*4 (S.D.N.Y. Feb. 24, 2017) ("[T]he election of remedies bar

---

[3] As noted above, the Complaint claims violations of the NYCHRL but does not actually bring any claims under that law. *See* Compl. ¶¶ 2, 61-66, 75-81. Even if the Complaint brought claims under the NYCHRL, however, they would be barred by the election-of-remedies doctrine for the reasons stated in this section.

operates to divest a federal court of subject matter jurisdiction over the relevant state law claims." (collecting cases)).

Before addressing the specifics of Rosich's claim, the Court must resolve an issue that neither of the parties raise. There are two exceptions to the election-of-remedies bar established by the NYSHRL and NYCHRL: "(1) a complaint filed with the [NYCCHR] or [NYSDHR] dismissed for administrative convenience . . . and (2) a complaint filed with the [NYCCHR] or [NYSDHR] by the EEOC pursuant to the Title VII requirement that all complaints filed directly with the EEOC be referred to the local agency (for duty-sharing purposes)." *Rasmy*, 2017 WL 773604, at *4 (second and fourth alteration and omission in original) (quoting *Alston*, 2009 WL 1116360, at *4). The first exception clearly does not apply, since the NYSDHR dismissed Rosich's complaint for lack of probable cause. NYSDHR Ord. at 1, 3. However, it is less obvious whether the second exception applies. Rosich alleges that he filed a complaint with the EEOC on July 31, 2023, but he has not provided a copy of what he purportedly filed with the EEOC. Compl. ¶ 6. La Salle argues that Rosich did not file a complaint directly with the EEOC until February 5, 2024, and has submitted copies of his 2024 EEOC complaint and 2023 NYSDHR complaint. *See* Br. at 5; NYSDHR Compl.; Dkt. 9-4. The EEOC right-to-sue letter in the record has a 2023 docket number, 16G-2023-04507. *See* Dkt. 9-5 at 2. While that docket number suggests that Rosich's charge was filed in 2023, not 2024, *see Alston*, 2009 WL 1116360, at *5 (looking to EEOC docket number to resolve year of filing), Rosich's NYSDHR complaint — received by the NYSDHR on August 3, 2023, but signed on July 31, 2023, *see* NYSDHR Compl. at 1, 5 — "authorize[d] [the NYSDHR] to accept this complaint on behalf of the [EEOC]," *id.* at 1, suggesting that he filed with the NYSDHR first, who then filed with the EEOC. Based on all the documentation, the Court finds that Rosich filed with the NYSDHR first and that

the NYSDHR accepted his complaint for itself and the EEOC.  *See Alston*, 2009 WL 1116360, at *5 (concluding that plaintiff filed with NYCCHR first based on, among other things, the fact that the NYCCHR complaint authorized it to accept the verified complaint on behalf of the EEOC).  Thus, the second exception to the election-of-remedies doctrine does not apply.

Turning to the merits of La Salle's 12(b)(1) motion, Rosich's NYSHRL claims for discrimination based on age and disability are directly barred by the election-of-remedies doctrine.  Rosich's NYSDHR complaint, like the claims he now raises before this court, charged La Salle with unlawful discriminatory practices related to his age and disability (and race, a claim he does not press here), as well as his opposition to discrimination and retaliation, arising out of the denial of his request for a reasonable accommodation, his wrongful termination as a result of refusing to sign the 2023-2024 employment contract, and forced relocation to a classroom without heat, the precise facts underlying his age and disability discrimination claims under the NYSHRL in the present Complaint.  *See* NYSDHR Order at 1-2.  On July 26, 2024, the NYSDHR determined that there was no probable cause to find that La Salle had engaged in the unlawful discriminatory practices complained of and dismissed Rosich's NYSDHR complaint.  *Id.* at 1, 3.  Because Rosich "brought an NYSHRL claim that was investigated and dismissed with a determination of no probable cause, the election of remedies doctrine bars the [NYSHRL and] NYCHRL claim[s] to the extent [they are] based on the same incident."  *Saudagar*, 2019 WL 498349, at *8.  As such, the Court lacks subject matter jurisdiction over those claims and must dismiss them.

The election-of-remedies doctrine also forecloses Rosich's gender discrimination claim under the NYSHRL because that claim is subject to the derivative bar.  While Rosich did not allege these claims before the NYSDHR, the election-of-remedies doctrine precludes

Rosich from "raising a new legal theory" if it is "premised on the same events underlying his NYSDHR or NYCCHR complaint." *Saudagar*, 2019 WL 498349, at *7. Here, the conduct underlying Rosich's gender discrimination claims is identical to the conduct underlying his age discrimination claims. *Compare* Compl. ¶¶ 26-27 (alleging that his reassignment to classroom 507 was an effort to discriminate against Rosich due to his sex and age), *with* NYSDHR Compl. at 4 (alleging that La Salle discriminated against Rosich based on his age when Rosich was reassigned to a smaller classroom without heat). While Rosich now asserts a new "legal theory" — that La Salle discriminated against him on the basis of his gender in addition to his age — this new legal theory is not enough to overcome the NYSHRL's jurisdictional bar. *See, e.g.*, *Rosario v. N.Y.C. Dep't of Educ.*, No. 10-cv-06160 (DLC), 2011 WL 1465763, at *2 (S.D.N.Y. Apr. 15, 2011) (explaining that jurisdictional bar precluded plaintiff's national origin discrimination claim, even though NYSDHR complaint alleged arrest record, marital status, and sex discrimination, since "the conduct underlying both claims [was] the same" and plaintiff "assert[ed] only a new 'legal theory,' which [was] insufficient to avoid the jurisdictional bar"). Thus, the Court also lacks jurisdiction over Rosich's gender discrimination claim under the NYSHRL.

Because the election-of-remedies doctrine forecloses Rosich's NYSHRL claims (and NYCHRL claims insofar as any are alleged), the Court grants La Salle's motion to dismiss those claims under Rule 12(b)(1).

## II.   Rule 12(b)(6) Motion

The Court next turns to Rosich's claims against La Salle under (1) the ADA for failure to accommodate, (2) Title VII (gender), the ADEA (age), and the ADA (disability) for discrimination, and (3) the ADA for retaliation. La Salle moves to dismiss these claims for failure to state a claim. Br. at 9-28.

### A.  Failure-to-Accommodate Claim (Count I)

Rosich claims that La Salle discriminated against him in violation of the ADA when it refused to provide him with a reasonable accommodation for his PTSD.  Compl. ¶ 58. Specifically, Rosich alleges La Salle denied his request for a 10-minute grace period for his arrival in November 2022 and in March 2023.  *Id.* ¶¶ 16-25.

To plead a failure-to-accommodate claim under the ADA, a plaintiff must allege that "(1) [the plaintiff] is a person with a disability under the meaning of [the ADA]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (first alteration in original) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *accord Samuels v. Urb. Assembly Charter Sch. for Comp. Sci.*, No. 23-cv-01379 (RA), 2024 WL 4008165, at *8 (S.D.N.Y. Aug. 30, 2024).

La Salle argues that Rosich's failure-to-accommodate claim should be dismissed because (1) La Salle lacked knowledge of Rosich's disability or the need for any accommodation, Br. at 11-13; (2) Rosich has not alleged that his disability caused his attendance problems, *id.* at 13-14; and (3) Rosich's proposed accommodation was not a reasonable accommodation, *id.* at 14-17.  The Court need reach only the first argument.

Rosich has failed to plead that he told La Salle about his alleged PTSD diagnosis or that he required an accommodation as a result.  "[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)); *see also Grimes v. N.Y. &*

*Presbyterian Hosp.*, No. 23-cv-00652 (MKV), 2024 WL 816208, at *7 (S.D.N.Y. Feb. 26, 2024) ("An employee possesses the initial responsibility to inform the employer that she needs an accommodation *and to identify the limitation that needs accommodating*." (alteration adopted) (internal quotation marks omitted)).  Here, while Rosich conclusorily alleges that he "disclosed" his "medical conditions . . . in 2022," Compl. ¶ 55, the *factual allegations* of the Complaint do not reflect that he informed La Salle that he suffered from PTSD or anything akin to a disability, or that he required an accommodation as a result.  The Complaint alleges that in November 2022, "Plaintiff Rosich requested accommodation of a 10 minute grace period for his morning arrival (after 7:40am)" and that he "would only need this accommodation during the winter months, when it was dark in the morning, or if his bus was late."  Compl. ¶ 16.  La Salle denied the request, *id.* ¶ 20, and on March 8, 2023, Conroy refused Rosich's proposal that Mr. Neering, his department chair, take over his homeroom responsibilities on mornings he was running late, *id.* ¶¶ 18-20, 22.  This does not plausibly allege either that La Salle was aware of his PTSD or that Rosich informed La Salle that he needed these "accommodations" as a result of a disability.

    *MacEntee v. IBM (International Business Machines)* is instructive.  *See* 783 F. Supp. 2d 434 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 49 (2d Cir. 2012) (summary order).  In that case, the plaintiff alleged that she told her manager "that she was depressed" during a meeting and "mentioned her need for a 'patient trainer,' but did not mention that th[e] request was because of her depression."  *Id.* at 444.  The Court held that the plaintiff failed to state a failure-to-accommodate claim because she had not alleged that her employer was on notice of her disability or refused a reasonable accommodation.  *See id.*  First, the court explained that plaintiff's mention of her depression did not "provide sufficient notice" of any need for an accommodation, since "the presence, duration and ever-varying severity of depression,"

"unlike disabilities that are visible to an employer, . . . cannot be adequately perceived or accommodated unless an employee informs in some manner her employer of her limitations as a result of such a disability." *Id.* Second, while the plaintiff alleged that she had requested a "patient trainer," she had not mentioned that her need for a patient trainer was because of her depression. *Id.* Thus, the employer could not "be held liable for failing to provide reasonable accommodations when it had no actual or constructive knowledge of the need for any accommodations." *Id.* Here too, Rosich has not alleged that he informed La Salle that he suffered from PTSD or was otherwise disabled within the meaning of the ADA, nor would a mental condition such as that be obvious. Rosich has not alleged that he told La Salle that his requests for late arrival and the associated coverage swap with Mr. Neering were because of his PTSD — indeed, Rosich's emails to Conroy reflect that he only told her that he was unable to drive because he had "difficulty driving in the dark and [felt] it unsafe to do so," and referenced his accident, Dkt. 9-9 at 3. As in *MacEntee*, Rosich has not alleged facts indicating that La Salle would have had knowledge of any disability-related reasons for his request; as such, Rosich has failed to state a claim for failure to accommodate under the ADA. *See* 783 F. Supp. 3d at 444; *see also, e.g.*, *Thomson v. Odyssey House*, 652 F. App'x 44, 46-47 (2d Cir. 2016) (summary order) (plaintiff failed to state a failure-to-accommodate claim under the ADA where she did "not allege when, if ever, she notified the defendant of her disability"); *Grimes*, 2024 WL 816208, at *7 (plaintiff failed to plead employer's notice where she failed "to allege any facts suggesting that she ever informed [her employer] as to the *nature and/or extent of her medical condition* such that [defendant] knew or should have known that she had a disability '*within the meaning of the* [*ADA*], *as opposed to a mere impairment*'" (first emphasis added) (second alteration in original) (quoting *Costabile*, 951 F.3d at 82)).

Since Rosich has not alleged that La Salle had notice of his disability or refused to make a reasonable accommodation for his disability, the Court dismisses his failure-to-accommodate claim under the ADA.

### B. Discrimination Claims (Counts I, III, and V)

The Court will next address Rosich's discrimination claims under the ADA, the ADEA, and Title VII for disability, age, and gender discrimination, respectively. Compl. ¶¶ 57, 72, 87. For a claim of discrimination under Title VII to survive a motion to dismiss "absent direct evidence of discrimination," Rosich must plead that he "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (alterations adopted) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "The same requirements apply for claims under the ADEA and the ADA except that under the fourth prong, the plaintiff's age or disability must be a but-for cause (rather than a motivating cause) of the plaintiff's injury." *Mitchell v. Planned Parenthood of Greater N.Y.*, 745 F. Supp.3d 68, 89 (S.D.N.Y. 2024) (collecting cases). The parties dispute whether Rosich has properly pleaded that he suffered adverse employment actions and whether he has pleaded facts sufficient to support an inference of discriminatory motive.

#### 1. Adverse Employment Action

To allege an adverse employment action, a plaintiff "must show some harm respecting an identifiable term or condition of employment," but does not have to show that "the harm incurred was 'significant.'" *Mitchell*, 745 F. Supp. 3d at 90 (quoting *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024)). Rosich alleges that he was discriminated against when La Salle (1) assigned him to a classroom with no working heat for the 2022-2023 school year and

did nothing in response to his March 14, 2023 complaint that his classroom was extremely cold, Compl. ¶¶ 27, 29-30; (2) denied his requested accommodation in November 2022 and March 2023, *id.* ¶¶ 16, 20-22; and (3) asked him to sign a 2023-2024 employment agreement that did not indicate his salary and concluded he was not returning to La Salle when he did not sign it, *id.* ¶¶ 35-42.

Taking the second purported adverse action first, La Salle does not address whether its alleged denial of an accommodation amounts to an adverse employment action. *See* Br. at 19-21. However, courts in this Circuit have held that "[f]ailing to accommodate an employee is, by itself, not sufficient for establishing an adverse employment action," since "the failure to accommodate must result in some *other* adverse employment action that materially alters the employee's working conditions." *Cangro v. N.Y.C. Dep't of Fin.,* No. 23-cv-10097 (LAP), 2024 WL 3833971, at *3 (S.D.N.Y. Aug. 14, 2024) (collecting cases). Thus, even if Rosich had properly alleged that La Salle failed to provide a reasonable accommodation, which he did not, he would not have alleged an adverse employment action.

As for the other two alleged adverse employment actions, La Salle concedes that Rosich's assignment to a classroom with no heat could constitute an adverse employment action. *See* Br. at 26; *Ximines v. N.Y.C. Dep't of Educ.*, No. 05-cv-01214 (ILG), No. 07-cv-04390 (ILG), 2011 WL 2607935, at *3-4 (E.D.N.Y. July 1, 2011) (assignment to classroom with dilapidated windows that became "so cold that [p]laintiff's ear would become 'numb'" rose to the level of a material adverse change in plaintiff's employment conditions). However, La Salle argues that other incidents — namely, La Salle's failure to respond to Rosich's complaint about his cold classroom in March 2023 and the dispute over the 2023-2024 employment agreement — are not adverse employment actions and cannot sustain his claims for discrimination. Br. at 19-22. The Court agrees.

17

First, La Salle's failure to respond to Rosich's March 14, 2023 complaint about the temperature of his classroom does not, on its own, constitute an adverse employment action. As La Salle points out, "[s]upervisory inaction" generally does "not suffice to constitute an adverse employment action." *Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12-cv-00925 (KPF), 2013 WL 6244158, at *15 (S.D.N.Y. Dec. 2, 2013). The fact that La Salle "did nothing to rectify the issue," Compl. ¶ 30, did not "[bring] about some 'disadvantageous' change in an employment term or condition," *Muldrow*, 144 S. Ct. at 974, since Rosich had already been working in a classroom without heat since some earlier (but unspecified) point in the 2022-2023 academic school year, Compl. ¶ 27. *See, e.g., Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 171 (E.D.N.Y. 2020) (employer's failure to respond to grievances regarding discrimination or requests for personnel files did not properly allege an adverse employment action); *cf. Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (explaining that "[a]n employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint," since "[h]er situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or for none at all"). La Salle's failure to respond to Rosich's complaint about the heat in his classroom thus does not support a discrimination claim under Title VII, the ADA, or the ADEA.

Second, Rosich's allegation that La Salle did not include his salary in the 2023-2024 employment agreement does not allege a plausible adverse employment action because the omission of the salary — the result of union negotiations for a salary *increase*, as stated in the employment agreement and the Union's collective bargaining agreement — did not result in any adverse consequence to the terms and conditions of Rosich's employment. The Supreme Court has explained that "[t]o make out a Title VII discrimination claim, a transferee must

show some harm respecting an identifiable term or condition of employment." *Muldrow*, 144 S. Ct. at 974. Here, La Salle sought to renew Rosich's employment under improved terms (namely, a salary increase) subject to negotiations between La Salle and the Union. *See* Dkt. 9-10 at 2. Moreover, the collective bargaining agreement expressly stated that the contract would "be reopened for negotiations over wage increases for the fourth (4th) year of th[e] Agreement," at which time the parties would discuss "the method and timing of adjusting the salaries of all teachers to bring them into compliance with the Step Salary Schedule." Dkt. 9-7 at 42-43. Thus, the fact that Rosich's employment agreement did not include a salary does not indicate that there was a "disadvantageous change" in the conditions of his employment, since the contract had been reopened for salary *increases* pursuant to the collective bargaining agreement, information about Rosich's salary range and scale could be found in the Step Salary Schedule of the collective bargaining agreement, *see id.* at 61, and there were no formal adverse consequences (such as a salary decrease). *Cf. Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112-13 (2d Cir. 2024) (holding that a "mere admonition by a supervisor *without any formal consequences* is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment" (emphasis added)). As a consequence, Plaintiff has not alleged an adverse employment action based on this event.

### 2. Discriminatory Intent

La Salle further argues that Rosich's discrimination claims under the ADA, Title VII, and the ADEA should be dismissed because the Complaint does not plead sufficient facts to provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent" based on Rosich's gender, age, or disability. *Buon*, 65 F.4th at 79

(quoting *Littlejohn*, 759 F.3d at 311); *see* Br. at 22-24 (ADA); *id.* at 26-28 (Title VII and ADEA).  The Court agrees.

Rosich alleges that La Salle assigned him to a classroom without heat for the 2022-2023 school year to discriminate against him due to his gender and age.  Compl. ¶ 27.  Rosich does not make any allegations about any younger or female teachers who conversely did not have heating issues with their classrooms.  To support his claim that his classroom reassignment was discriminatory, Rosich identifies two other male La Salle teachers in their late sixties, P.M. and R.C., who he alleges were also subject to discrimination as part of a "pattern[] of discrimination towards other, older male teachers within the one year period leading up to the end of Plaintiff Rosich's employment."  *Id.* ¶ 28; *see id.* ¶¶ 32-34.  The Second Circuit has held that while "an individual plaintiff may not proceed under a 'pattern-or-practice' method of proof endorsed by the Supreme Court in [*Teamsters*]," "'proof that an employer engaged in a pattern or practice of discrimination' may still 'be of substantial help in demonstrating an employer's liability in the individual case,' as long as the plaintiff meets 'each element of his or her claim.'"  *Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, at *3 n.3 (2d Cir. Mar. 16, 2022) (summary order) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2d Cir. 2012)).

Rosich's allegations about P.M. and R.C. do not support a general practice of discrimination or support an inference that La Salle had a discriminatory motive when it reassigned Rosich to classroom 507.  First, Rosich has not alleged facts supporting an inference that either P.M. or R.C. were subject to discrimination.  *See Rubinow v. Boehringer Ingelheim Pharms., Inc.*, No. 08-cv-01697, 2010 WL 1882320, at *4-5 (D. Conn. May 10, 2010) (plaintiff failed to plead a "pattern and practice claim" because she did not properly plead that any other employee was subject to discrimination).  Rosich alleges that La Salle

asked P.M., a 68-year-old male teacher, to pack his classroom up during the school year so it could be used as a fitness room, but never in fact repurposed it. Compl. ¶ 32. However, the courts in this Circuit are clear that a change in office, without more, "does not constitute an adverse employment action." *Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (collecting cases). Rosich also alleges that R.C., a 69-year-old male teacher, "expressed interest" in being appointed Social Studies Department chair, was "more than qualified" for the position, and yet La Salle "denied his request and hired a younger, less qualified candidate." Compl. ¶ 33. These allegations also do not support an inference of discrimination: Rosich does not allege that R.C. ever applied for the department chair role, nor has he alleged the age or qualifications of the younger candidate. *See, e.g.*, *Lopez v. N.Y.C. Dep't of Educ.*, No. 17-cv-09205 (RA), 2020 WL 4340947, at *6 (S.D.N.Y. July 28, 2020) (dismissing failure-to-promote claim under the ADEA where plaintiff did "not plead that he actually applied for the position of lead teacher, let alone that he was rejected from that position"); *id.* at *9 (merely alleging that other teachers were "younger" did not demonstrate that age was the but-for cause of adverse actions); *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 433, 465-66 (S.D.N.Y. 2010) (dismissing ADEA claim where plaintiffs "merely allege[d] that [they were] over 40 years of age and were replaced by younger" and "less qualified" teachers, since such allegations lacked "facts from which age discrimination [could] be inferred"), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (summary order); *Pustilnik v. Battery Park City Auth.*, No. 18-cv-09446 (RA), 2019 WL 6498711, at *6 (S.D.N.Y. Dec. 3, 2018) (dismissing ADEA claim where plaintiff did not allege any detail showing how the "younger" employees were similarly situated to plaintiff). Second, even if Rosich *had* alleged that La Salle discriminated against P.M. or R.C. because of their age, allegations of two instances of discrimination, without more, would not support

an inference that there was a general pattern of discrimination.  *See Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 362 (S.D.N.Y. 2024) ("To infer such a pattern without statistical support, 'more than two acts [of discrimination] will ordinarily be required.'" (quoting *Ste. Marie v. E. R.R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981)); *see also Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 431 (S.D.N.Y. 2014) ("Specifically with respect to motions to dismiss, courts have held that three instances of discrimination were insufficient to state a plausible pattern-or-practice claim, as were six instances, but that eleven or twelve instances were sufficient." (citations omitted) (collecting cases)).

As such, Rosich has not alleged facts supporting an inference that that discrimination on the basis of age or gender was La Salle's "standard operating procedure," *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977), and as such has not alleged facts supporting an inference that an improper motive infected La Salle's decision to reassign him to classroom 507.[4]  The Court therefore dismisses Rosich's discrimination claims under the ADA, ADEA, and Title VII.

---

[4] Rosich also alleges that other faculty members received accommodations for orthopedic issues or the long-term effects of COVID-19, Compl. ¶ 25, but does not allege anything beyond the fact that these faculty members received accommodations, preventing the Court from assessing whether they were similarly situated to Rosich.  *See Littlejohn*, 795 F.3d at 312 ("[A]dverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination."); *see, e.g.*, *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (summary order) (discrimination claim failed where plaintiff "alleged no facts showing that [certain] employees were suitable comparators"); *Eng v. City of New York*, 715 F. App'x 49, 52 (2d Cir. 2017) (summary order) (plaintiff failed to allege similarly situated comparators where she failed to "provide[] factual allegations about her or the comparators' job duties, skills, efforts, or responsibilities to demonstrate that their respective jobs were substantially equal").  Therefore, these allegations fail to give "at least minimal support for the proposition that" La Salle was "motivated by discriminatory intent." *Buon*, 65 F.4th at 79 (citation omitted).

### C. ADA Retaliation Claim (Count I)

Finally, Rosich alleges that La Salle retaliated against him in violation of the ADA because he requested accommodation of his PTSD.  Compl. ¶¶ 48-60.  La Salle moves to dismiss this claim.  Br. at 19-24.

To plead a *prima facie* cause of retaliation under the ADA, a plaintiff must plausibly allege that "(i) [he] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Natofsky*, 921 F.3d at 353 (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002)); *accord Mitchell v. Planned Parenthood of Greater N.Y.*, No. 23-cv-01932 (JLR), 2025 WL 1795378, at *12 (S.D.N.Y. June 30, 2025).[5]

As to the first and second elements of the retaliation claim, to survive a motion to dismiss, Rosich must have pleaded that he "engaged in protected activity of which [his] employer [was] aware."  *Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (summary order).  La Salle argues that Rosich's retaliation claim should be dismissed because he has not pleaded that he engaged in any protected activity of which La Salle was aware.  Br. at 17-19.  The Court agrees.  "Protected activity includes opposing an unlawful employment practice or otherwise making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing," *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (internal quotation marks omitted), as well as "a good faith request for an

---

[5] The antiretaliation provisions of the Title VII and the ADA are "substantially similar," *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024), and retaliation claims under both statutes are analyzed using "the well-known *McDonnell Douglas* burden-shifting framework," *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (Title VII); *accord Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (ADA).

accommodation," *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 251 (S.D.N.Y. 2025) (citation omitted); *see also Tafolla v. Heilig*, 80 F.4th 111, 126 (2d Cir. 2023) (request for accommodation was protected activity under ADA). Since Rosich has not pleaded facts suggesting that he ever told La Salle about his alleged PTSD diagnosis or that he required an accommodation as a result of his disability, he has failed to plead either that he engaged in protected activity or that La Salle was aware of any protected activity. *See, e.g.*, *Dolac v. County of Erie*, No. 20-2044, 2021 WL 5267722, at *2 (2d Cir. Nov. 12, 2021) (summary order) (plaintiff did not allege "that she identified a disability to her employer, or sought an accommodation," and thus failed to plead either that plaintiff engaged in a protected activity or that her employer had notice of the same); *Ibrahim v. Pena*, No. 16-cv-07774 (VEC), 2017 WL 3601246, at *4 (S.D.N.Y. Aug. 21, 2017) (dismissing ADA retaliation claim where plaintiff "failed to allege plausibly that [defendant] knew that she was engaged in protected activity"); *Eccleston v. City of Waterbury*, No. 19-cv-01614, 2021 WL 1090754, at *10 (D. Conn. Mar. 22. 2021) (dismissing ADA retaliation claim where plaintiff failed to plead that he informed his employer that he had PTSD or sought accommodations for that disability); *Lillico v. Roswell Park Comprehensive Cancer Ctr.*, No. 21-cv-00836, 2022 WL 2109207, at *4 n.4 (W.D.N.Y. June 10, 2022) (plaintiff failed to allege that he requested any accommodation and so did not allege his participation in a protected activity for purposes of his ADA retaliation claim).

Rosich has also failed to allege a causal connection between the only plausible materially adverse employment action he alleges — his reassignment to classroom 507 with insufficient heat, *see supra* p. 17— and any alleged protected activity. To adequately plead causation under the retaliation provisions of the ADA, a plaintiff must plausibly allege that "'but for' the protected activity, the adverse action would not have been taken." *Sharikov v.*

*Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024). "Causation may be shown either through direct evidence of retaliatory animus or 'indirectly, by showing that the protected activity was followed closely by discriminatory treatment.'" *Id.* (quoting *Tafolla*, 80 F.4th at 125). Even if Rosich's request for a 10-minute grace period for his arrival could be considered protected activity, which it is not given that he has not alleged that he requested a reasonable accommodation for his disability, Rosich does not claim that but for his protected activity, La Salle would not have reassigned him to classroom 507. Instead, Rosich pleads only that "La Salle then assigned [him] during the academic 2022-2023 school year, to work in classroom 507 which had no heat in an effort to discriminate against Plaintiff due to his sex and age," Compl. ¶ 27, not because he requested an accommodation for a disability or engaged in any other protected activity.

Because Rosich has failed to plausibly allege facts supporting that he engaged in protected activity or that La Salle was aware of his protected activity, and to allege a causal connection between any protected activity and an adverse employment action, the Court grants the motion to dismiss Rosich's retaliation claim.

## III.    Leave to Amend

Rosich also seeks leave to amend should the Court grant La Salle's motion, and filed a proposed Amended Complaint as an exhibit to his opposition. Opp. at 1; *see generally* PAC. In the PAC, Rosich has principally added allegations about his conversations with faculty and leadership at La Salle about his accident, his reassignment to classroom 507, the other male coworkers he alleges La Salle discriminated against, and an email Kenny and Brother Thomas sent him on May 31, 2023. PAC ¶¶ 15-16, 29-30, 36, 41. La Salle argues that Rosich should not be granted leave to amend because the PAC does not cure the deficiencies identified in the motion to dismiss and thus leave to amend is futile. Reply at 1. For the reasons that follow,

the Court agrees with La Salle that the PAC does not cure the deficiencies of the Complaint
and dismisses the Complaint with prejudice.

A court "should freely give leave" to amend a complaint "when justice so requires."
Fed. R. Civ. P. 15(a)(2). "[A]lthough Rule 15 requires that leave to amend be 'freely given,'
district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that
are dilatory, unfairly prejudicial, or otherwise abusive," and "may properly deny leave when
amendment would be futile." *Stegemann v. United States*, 132 F.4th 206, 210 (2d Cir. 2025)
(alteration in original) (citations omitted). "An amendment to a pleading is futile if the
proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente
v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted); *accord Jones-Cruz v.
Rivera*, No. 19-cv-06910 (PGG), 2022 WL 20437017, at *7 (S.D.N.Y. Oct. 28, 2022).

Since the Court lacks subject-matter jurisdiction over Rosich's NYSHRL and
NYCHRL claims, those claims are dismissed without leave to amend. *See Wewe v. Mt. Sinai
Hosp.*, 518 F. Supp. 3d 643, 650 (E.D.N.Y. 2021) (denying leave to amend and explaining
that "amendment would be futile because of th[e] court's lack of subject matter jurisdiction");
*Suarez*, 2025 WL 894516, at *10 (dismissing NYSHRL and NYCHRL claims barred by the
election-of-remedies doctrine without leave to amend). Rosich's federal claims are also
dismissed without leave to amend. The new allegations in the PAC fail to remedy any of the
problems identified in the Complaint and thus amendment would be futile. *See Silva-Markus
v. N.Y.C. Dep't of Educ.*, No. 19-cv-04335 (PGG) (SLC), 2022 WL 736425, at *6 (S.D.N.Y.
Mar. 11, 2022) ("Although under Rule 15(a) . . . leave to amend complaints should be 'freely
given,' leave to amend need not be granted where the proposed amendment is futile." (citation
omitted)).

First, the PAC, now omitting several references to PTSD, adds that Rosich showed pictures of his accident to leaders at La Salle, including Conroy and Mr. Neering, and discussed how the accident "disturbed him and ultimately gave him stress and anxiety when he was on the road." PAC ¶ 15. This allegation still does not support that Rosich informed La Salle that he suffered from PTSD or was otherwise a person with a disability within the meaning of the ADA, nor that La Salle was on notice that Rosich was disabled or that he needed the accommodation of arriving late to accommodate his alleged disability. *See supra* at 13-16; *see also Conway v. Healthfirst Inc.*, No. 21-cv-06512 (RA), 2022 WL 4813498, at *6 (S.D.N.Y. Sept. 30, 2022) (plaintiff failed to allege that he was a person with a disability under the ADA even where he alleged that he had PTSD and anxiety because he did not allege whether his PTSD and anxiety were permanent or temporary conditions); *Koonce v. Whole Foods Mkt. Grp.*, No. 22-cv-10418 (VB), 2023 WL 8355926, at *3 (S.D.N.Y. Dec. 1, 2023) (holding that plaintiff alleging difficulty driving to work after concussion failed to allege he was disabled under the ADA, and noting that "[c]ourts in the Second Circuit have found that driving and commuting to work are not [] major life activities" (alteration in original) (citation omitted)); *Lewis v. R.L. Vallee, Inc.*, No. 24-1438, 2025 WL 1077412, at *2 (2d Cir. Apr. 10, 2025) (summary order) (plaintiff failed to allege that he was disabled within the meaning of the ADA where he did not allege how PTSD "substantially limit[ed] one or more major life activities").

Next, the PAC's new allegations that classroom reassignments were rare, that no other teacher was transferred to a classroom without heat, and that each teacher with heat in the winter was either younger, or a different gender than Rosich, PAC ¶¶ 29-30, still do not cure the problems identified above with Rosich's failure to properly plead the existence of comparators, since Rosich has not alleged facts about these other teachers that would permit

the Court to evaluate whether they were similarly situated. *See Budhan v. Brightworks Sustainability LLC*, No. 24-cv-05104 (PAE), 2025 WL 919926, at *5 (S.D.N.Y. Mar. 26, 2025) (dismissing discrimination claim where plaintiff did not "identify any ostensible comparator," "let alone supply details minimally supporting that the difference in treatment accorded [plaintiff] and her putative comparators was due to their different races"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (allegation that no male employees were sent home from work failed to allege that defendants were motivated by gender discrimination, since the complaint did not "identify, let alone describe, any purported comparator" and thus did not allege that "any *similarly situated* male employee received more favorable treatment"); *see, e.g.*, *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 499 (E.D.N.Y. 2019) (allegation that defendants regularly granted the requests of other, white teachers for scheduling changes and classroom transfers failed to plead claim of disparate treatment where plaintiff "fail[ed] to describe who those people are [or] what their responsibilities were" (citation omitted)); *id.* (explaining that "[h]ere, the fact that [p]laintiff and her colleagues are all teachers is not enough" to plead that the colleagues were similarly situated for purposes of disparate-treatment claim); *Henderson v. Physician Affiliate Grp. of N.Y. P.C.*, No. 18-cv-03430 (JMF), 2019 WL 3778504, at *5 (S.D.N.Y. Aug. 12, 2019) ("Put simply, [the plaintiff] fails to identify *any* similarly situated comparator, alleging only 'upon information and belief' that the 'other' physicians in the Obstetrics and Gynecology Department — 'none of whom were African-American or disabled, and most of whom were younger' — were treated differently. Without more, that is insufficient." (citations omitted)); *cf. Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 454-55 (plaintiff plausibly alleged inference of discrimination where she alleged that non-Black "employees who h[e]ld the same educational degree and title" "did not have unbalanced schedules while

Black social workers did"); *Santana v. Mt. Vernon City Sch. Dist./Bd. of Educ.*, No. 20-cv-03212 (NSR), 2023 WL 2876653, at *11 (S.D.N.Y. Apr. 7, 2023) (plaintiff failed to state age discrimination claim where he alleged that "younger teachers received more favorable reviews and assignments," but provided "no information as to his comparator's age and their respective qualifications").

Third, the PAC alleges that that P.M. and R.C. had "no history of negative evaluations or performance during their employment" at La Salle.  PAC ¶ 36.  However, the additional detail about P.M. and R.C. — which seemingly addresses the question of whether they were otherwise qualified for their positions — does not overcome Rosich's failure to plausibly plead either that P.M. and R.C. were discriminated against or that there was a pattern and practice of discrimination against older, male employees.  *See supra* pp. 19-22; *Barrett*, 39 F. Supp. 3d at 431 ("Specifically[,] with respect to motions to dismiss, courts have held that three instances of discrimination were insufficient to state a plausible pattern-or-practice claim, as were six instances, but that eleven or twelve instances were sufficient." (citations omitted) (collecting cases)); *see, e.g.*, *Brooks v. Bright Horizons Fam. Sols., Inc.*, No. 24-cv-06076 (PAE), 2025 WL 1796995, at *9 (S.D.N.Y. June 26, 2025) (dismissing failure-to-promote claim because plaintiff "fail[ed] to allege facts enabling an assessment of the relative qualifications of [plaintiff] and [the person] who was promoted over her"); *Trachtenberg*, 937 F. Supp. 2d at 468 (explaining that a change in office, without more, ordinarily does not support a claim of discrimination); *Lopez*, 2020 WL 4340947, at *9 (merely alleging that other teachers were "younger" did not demonstrate that age was the but-for cause of adverse actions).

Finally, Rosich's allegation that Kenny and Brother Thomas emailed him on May 31, 2025, to tell him to speak with his union representative, *id.* ¶ 41, does not alter in any way the

Court's conclusion that the missing salary in the 2023-2024 employment agreement was not an adverse employment action for the reasons explained above, *see supra* pp. 18-19.

As such, because the new allegations in the PAC still fail to state claims for failure to accommodate or retaliation under the ADA, or discrimination under Title VII, the ADA, and the ADEA, and because the Court lacks subject matter jurisdiction over Rosich's NYSHRL claims (and NYCHRL claims, insofar as the Complaint alleges them), amendment would be futile.  The Court thus denies Rosich's request for leave to amend.

## CONCLUSION

For the foregoing reasons, La Salle's motion to dismiss the Complaint with prejudice is GRANTED.  The Clerk of Court is respectfully directed to terminate the motions at Dkts. 7, 8, and 9, and to close the case.

Dated: August 20, 2025
      New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge